245 So.2d 411

**Leona W. HORNSBY**

**v.**

**FIDELITY NATIONAL BANK OF BATON ROUGE.**

No. 51225.

March 24, 1971.

In re: Leona W. Hornsby applying for certiorari or writ of review to the Court of Appeal, First Circuit, Parish of East Baton Rouge. 243 So.2d 96.

Writ denied. On the facts found by the Court of Appeal its finding of "sound discretion" in the depository is correct.

SUMMERS, J., dissents from the refusal to grant writs and assigns reasons.

SUMMERS, Justice (dissenting from the refusal to grant writs).

Leona W. Hornsby, a surviving wife in necessitous circumstances, is denied the right to withdraw $2,500 on deposit to the account of her deceased husband in the Fidelity National Bank of Baton Rouge contrary to the meaning and intent of Section 1513 of Title 9 of the Revised Statutes.[1] By this action the depository of funds is wrongfully authorized and empowered to determine the eligibility of a surviving widow to the funds which the Legislature clearly intended that she should have available at her husband's death. See, La.App., 243 So.2d 96.

The bank's action is said to be justified because 1) the funds were deposited to the decedent's credit after his death; 2) the statute does not apply once the probate proceedings are commenced to settle the succession of the deceased spouse; and 3) the word "may" used in the statute is permis-

1. La.R.S. 9:1513:
    "Any bank or other depository may pay to the surviving widow or surviving husband of a depositor not to exceed twenty-five hundred dollars out of the deposits of a decedent or out of deposits of the com-

sive, giving the bank authority to release or not release the funds in its discretion.

The first two grounds are clearly without merit, for no such restrictions are imposed in the statute. A radical departure from the obvious intent and purpose of the statute and the insertion of conditions not found there would be required to support these contentions. No serious argument is made to support these two contentions.

In its decision the Court of Appeal, though recognizing that the funds are intended to meet the needs of a surviving spouse in necessitous circumstances, gives no effect to the fact that this surviving spouse is in necessitous circumstances. The opinion turns, instead, upon the proposition that the statute is permissive in nature. In doing so a narrow, restrictive construction is placed on the word "may" in reliance upon Section 3 of Title 1 of the Revised Statutes, where it is declared that "the word 'may' is permissive." This method avoids the compelling reasons and authority of Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295

(1951) and Gurtler Hebert & Co. v. Marquette Casualty Co., La.App., 145 So.2d 145 (1962).

The principle at issue was stated in the Rathborne Case where the Court was interpreting the meaning of the word "may" in a statute:

> It is well recognized, however, that although words of a statute are permissive, directory or enabling in character ordinarily, sometimes they may require an interpretation giving them mandatory effect, this occurring where the context or subject matter compels such construction or where it is necessary to carry out the clear policy and intention of the Legislature.

The very authority relied upon by the Court of Appeal to support the narrow and restrictive view adopted in its opinion is refuted by the first paragraph of that section of the Revised Statutes, which declares at the outset that "Words and phrases shall be read with their context * * *." (La.R.S. 1:3)

---

munity between the survivor and the decedent, deposited in the name of decedent or of the survivor or in the name of the decedent jointly with the survivor or otherwise, without any court proceedings, order or judgment authorizing the same or determining whether or not an inheritance tax is due. The surviving spouse shall give to the paying depository an affidavit that the total funds withdrawn do not exceed $2,500 from all depositories. In

event of such payment, the receipt of the surviving spouse to whom it is made is a full release and discharge of the payor bank or other depository for the amount paid and for any inheritance tax determined to be due, and no tax collector, creditor, heir, personal representative, or any other person shall have any right or cause of action against any bank or other depository on account of the payment."

A more plausible construction of the controverted language of the statute (La. R.S. 9:1513) would require that the depository deliver the funds when all of the conditions mentioned in the statute have been satisfied as they have been in this case. The money sought to be withdrawn does not exceed $2,500; it is demanded "out of the deposits of the decedent;" and the surviving spouse has tendered the bank depository an affidavit that the total funds sought to be withdrawn do not exceed $2,-500 from all depositories, all in accordance with the statute.

But the majority, by refusing writs, requires the surviving spouse to resort to "court proceedings" in an effort to obtain the funds, a result the statute specifically sought to avoid. By this decision the depository bank may always find a reason for refusing the delivery the statute authorizes, such as the reasons advanced by the Court of Appeal that the surviving spouse is claiming in a dual role as surviving spouse and creditor, there are conflicting claims to the funds and the speculative hypothesis that the surviving spouse may not be entitled to the funds.

In my view the Legislature intended, and the language of the statute makes it clear, that the surviving spouse was entitled to withdraw these limited funds by virtue of her status as surviving spouse and no other

reason is required or necessary to justify the action--not indigency, freedom of the funds from claims of creditors or other reasons. The statute deals with the right of the surviving spouse to withdraw the funds, nothing more. It does not purport to alter the claims to that fund otherwise permitted by law, except as specifically set forth in the statute itself. There is no cause, therefore, for the Court to concern itself about those claims. It seems obvious to me that the mere relationship of surviving spouse makes the need for the funds apparent, and the amount has been increased over the years to allow the surviving spouse to cope with the additional costs invariably related to a death in the family. Act 539, 1952, § 1; Act 559 of 1956, § 1; Act 126 of 1958, § 1; Act 194 of 1964, § 2.

It may be that in some isolated instances creditors may be prejudiced by an irresponsible surviving spouse who may strip the succession of its last asset by the withdrawal, but I cannot believe this consideration was disregarded by the Legislature. A legislative balancing of public needs may warrant legislation which would permit the consumption of the succession's sole limited asset by an impecunious widow in disregard of the claims of creditors. It suffices to say that the problem addresses itself to the Legislature and not the courts.

I respectfully dissent.